## WYNN v. CARLIN et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

1. NEGLIGENCE (§ 48*)—KNOWLEDGE OF DANGER—CONSTRUCTIVE KNOWLEDGE —TIME.

Where a ladder furnished by defendants for their subcontractors in building a house was not unfastened at the top and was safe when a carpenter descended it at 12 o'clock noon, sufficient time had not elapsed to charge defendants with constructive notice that it was unfastened and unsafe to use when such carpenter ascended it shortly after 1 o'clock.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 51; Dec. Dig. § 48.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. NEGLIGENCE (§ 135*)—INJURIES—ACTIONS—SUFFICIENCY OF EVIDENCE.

    In an action against the general contractor by a carpenter employed by the subcontractor for injuries caused by falling from a ladder furnished by defendants because it was not fastened to the building at the top, evidence *held* not to show plaintiff's freedom from negligence.

    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 274–276; Dec. Dig. § 135.*]

Appeal from Trial Term, Kings County.

Action by Patrick Wynn against Thomas G. Carlin and others. From a judgment dismissing the complaint as to defendant Carlin, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, THOMAS, and MILLER, JJ.

John J. O'Neill, for appellant.

Carl Schurz Petrasch, for respondent.

HIRSCHBERG, P. J. The action is for negligence, and a nonsuit was granted at the close of the plaintiff's case. I think it was properly granted. The plaintiff received severe injuries while at work as a roofer in the construction of a building in the borough of Queens on the 30th day of March, 1904. He was employed by a firm who had the contract for the roofing, and whose members were made defendants originally with the respondent, who was the general contractor for the building; the suit being discontinued as against the firm at the trial. The plaintiff was the foreman in charge of the roofing. The stairs were not built at the time of the accident; the roof being reached by means of three ladders placed in a well hole at about the center of the building. The lowest ladder reached to the top of the second story, and while the plaintiff was ascending it, a few minutes after 1 o'clock of the day stated, he was thrown from it by reason of the fact that it was not fastened, and from the fall thereby occasioned received the injuries of which he complains.

The plaintiff had been engaged in the business of roofing for 35 years, during which time it was his constant practice to go up and down ladders. He had used the ladder in question a number of times before the accident, and had come down by means of it at noontime of the day in question. He testified that on all those occasions the ladder was in a proper condition and safe. When he commenced the ascent at the time he was injured, he discovered the condition of the ladder at the outset. He testifies:

"When I was up on the second or third rung, or so, I felt the top of the ladder knock against the beam—the beam on the second floor above. Then I knew the ladder wasn't fastened. I was about 12 or 15 feet up when I fell; in other words, I had passed the first floor. I was about 5 feet beyond the floor. I was above it, I don't know how far. * * * I had just had my dinner, and the very last time I went down that ladder was just before dinner, 12 o'clock; after the whistle blew, 12 o'clock. Twelve o'clock I went down. I did not notice anything the matter with the ladder at that time, 12 o'clock. It seemed all right at that time. * * * I never heard any complaints about the ladder before I fell; and in fact, up to the time that I fell, up to this very last trip that I made on that ladder, I thought the ladder was perfectly safe."

No proof was given as to who supplied the ladder. There was evidence that it was customary for the general contractor to do so. Assuming that the respondent supplied the ladder in this instance, there was no evidence of neglect on his part; no evidence of actual knowledge that it was unfastened and in an unsafe condition. Time had not elapsed sufficiently to charge him with constructive notice, and obviously the plaintiff when he used the ladder knew the danger incident to such use. The case of Dougherty v. Weeks & Son, 126 App. Div. 786, 111 N. Y. Supp. 218, seems controlling, even assuming the existence of a defect in the condition of the ladder for which the defendant upon notice could be held responsible in the circumstances. The court said (page 790 of 126 App. Div., page 221 of 111 N. Y. Supp.):

"A ladder is a simple appliance. * * * There is no evidence of any prior accident. There is no evidence of any notice to the defendant of any defect. The condition complained of had existed but two days prior to the accident according to the evidence, when one of the witnesses caused one of the rungs to revolve by the exercise of force. The plaintiff himself had used the ladders a half a dozen times without discovering the alleged defect. It seems to us that when such a simple appliance, properly constructed and of sound and good material, has been furnished, to hold the person furnishing it guilty of negligence for not discovering and remedying such a defect, it must appear that it had existed for such a period that he ought to have known of the defect, if he did not, and therefore was as responsible as if knowing the defect he had not remedied it."

The plaintiff failed on both branches of his case, namely, in showing negligence on the part of the defendant (respondent), and freedom from contributory negligence on his own part. The judgment should be affirmed.